IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| G. DAVID JANG, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-681-SLR |
| | ) |
| BOSTON SCIENTIFIC SCIMED, | ) |
| INC., a corporation; and | ) |
| BOSTON SCIENTIFIC | ) |
| CORPORATION, a corporation, | ) |
| | ) |
| Defendants. | ) |

---

Tara M. DiRocco, Esquire of Cross & Simon LLC, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jed I. Bergman, Esquire and Marc E. Kasowitz, Esquire of Kasowitz, Benson, Torres & Friedman LLP.

Karen L. Pascale, Esquire of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Edward Han, Esquire, John Nilsson, Esquire, and Matthew M. Wolf, Esquire of Arnold & Porter LLP.

---

**MEMORANDUM OPINION**

Dated: September 30, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff G. David Jang, M.D. ("plaintiff") filed a complaint in the United States District Court for the Central District of California on May 25, 2010 against Boston Scientific Scimed, Inc. ("Scimed") and Boston Scientific Corporation ("BSC") (collectively, "defendants") alleging breach of contract, fiduciary duty, and implied covenant of good faith and fair dealing, and seeking enforcement of an equitable lien. (D.I. 1) The case was transferred to this court on August 9, 2010. (D.I. 17) Currently before the court is defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and cross-motion to stay discovery pending resolution of Rule 12(c) motions. (D.I. 31, 61) Also before the court is plaintiff's Rule 12(c) motion for judgment on the pleadings as to liability on counts I and II of the complaint, and motion to compel discovery pursuant to Rule 37. (D.I. 49, 57) The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). For the reasons that follow, the court grants defendants' motion for judgment on the pleadings.

## II. BACKGROUND

Plaintiff is a medical doctor and a citizen of California. (D.I. 1 at ¶ 1) Plaintiff is the inventor of, inter alia, the intravascular stent covered by United States Patent No. 5,922,021 ("the '021 patent"). (*Id.* at ¶ 5) Scimed is a Minnesota corporation with its headquarters and principal place of business in Maple Grove, Minnesota. (*Id.* at ¶ 2) BSC is a Delaware corporation with its headquarters and principal place of business in Natick, Massachusetts. (*Id.*)

Plaintiff designed and developed stent technology, certain of which Scimed

desired to acquire. (D.I. 47, ex. A at 56) On June 3, 2002, plaintiff and Scimed entered into an assignment agreement ("the Agreement") in which plaintiff agreed to assign numerous patents,[1] including the '021 patent (collectively, "the Jang stent patents"), to Scimed. (D.I. 1 at ¶ 7) Plaintiff and BSC entered into a part time employment arrangement to facilitate the development and commercialization of the stent technology.[2] (D.I. 47, ex. A) Scimed agreed to pay plaintiff $50 million at closing and up to an additional $110 million depending upon the occurrence of various contingencies. (D.I. 1 at ¶ 7) One such contingency involves the outcome of any litigation Scimed may commence against a third party infringer of any of the assigned Jang stent patents. (*Id.* at ¶ 8) The Agreement provides that plaintiff is entitled to ten percent of Scimed's recovery from a third party infringer. (*Id.*) Plaintiff alleges that he is entitled to an additional $50 million if Scimed's sales or a third party infringer's sales of stents, covered by any of the Jang stent patents during a five year period commencing upon the first U.S. sale, equals or exceeds $2.5 billion. (*Id.* at ¶ 9) The Agreement provides that it shall be governed and construed in accordance with the law of the Commonwealth of Massachusetts. (D.I. 47, ex. A at § 9.7)

On January 12, 2003, Cordis Corporation ("Cordis") sued defendants for patent infringement in this court. (D.I. 1 at ¶ 10) (Civ. No. 03-027) Defendants filed a counterclaim against Cordis on March 5, 2003 seeking recovery for infringement of the

---

[1] United States Patent Numbers: 5,922,021; 5,954,743; 6,039,756; 6,152,957; 6,235,053; 6,241,760; 6,409,761; 6,770,088; 6,783,543; 7,081,130; 7,326,241. (D.I. 47, ex. C at § 1.3)

[2] The court is unable to locate the employment agreement, exhibit 4.2(g) of the Agreement, entered into by Jang and BSC.

'021 patent. (D.I. 1 at ¶ 10) A jury returned a verdict on July 1, 2005 in favor of defendants, finding that the '021 patent was valid and that Cordis had infringed it. (*Id.* at ¶ 11) The United States Court of Appeals for the Federal Circuit affirmed the jury's verdict on March 31, 2009. (*Id.*); *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319 (Fed. Cir. 2009). The case was remanded to this court for a trial on damages. (*Id.* at ¶ 11) On October 17, 2008, Cordis filed a second suit against defendants for patent infringement, Civ. No. 08-779. (*Id.* at ¶ 10)

On October 5, 2009, plaintiff gave notice to defendants that he was claiming a lien on: (1) all rights of BSC and/or Scimed to recover from Cordis for infringement of the '021 patent in Civ. No. 03-027; and (2) all consideration received or received in the future by BSC and/or Scimed from Cordis, Johnson & Johnson, Inc. ("J&J"), or any other person or entity in Civ. No. 03-027.[3] (*Id.* at ¶ 12) On February 1, 2010, before the damages trial, BSC settled Civ. No. 03-027. (*Id.* at ¶ 13) BSC: (1) granted Cordis and J&J fully paid-up, retroactive, perpetual, and irrevocable licenses to eleven Jang stent patents, including the '021 patent which Cordis infringed; (2) stipulated to entry of judgment in Civ. No. 03-027 and Civ. No. 08-779 in favor of J&J and paid $1.75 billion; and (3) released all pending claims against Cordis and J&J in Civ. No. 03-027 for infringement of any of the Jang stent patents, including the '021 patent. (D.I. 47, ex. C at § 6.1) Cordis and J&J: (1) granted defendants fully paid-up, retroactive, perpetual,

---

[3] Johnson & Johnson, Inc. and Cordis Corporation collectively brought suit against defendants in Civ. No. 03-027. (D.I. 46 at 1)

and irrevocable licenses to the Gray patents owned by Cordis and J&J;[4] (2) granted defendants fully paid-up, retroactive, perpetual, and irrevocable licenses to the Palmaz patents;[5] and (3) released any pending claims against defendants for infringement of these patents in both Civ. Nos. 03-027 and 08-779. (D.I. 1 at ¶ 14; D.I. 47, ex. C at § 6.2)

In the complaint at bar, plaintiff seeks: (1) $100 million, consisting of a ten percent share of the Civ. No. 03-027 settlement capped at $50 million for the recovery of damages for infringement and $50 million from infringing sales allegedly reaching $2.5 billion; (2) $100 million, consisting of $50 million for the irrevocable licenses to the eleven Jang stent patents granted to Cordis in addition to $50 million from the licensing consideration allegedly reaching $2.5 billion; (3) "an amount not less than $100 million" for breach of the implied covenant of good faith and fair dealing; (4) "an amount not less than $100 million" for breach of fiduciary duty; and (5) foreclosure of Jang's lien on the licenses to the Gray and Palmaz patents or, in the alternative, $100 million in damages against defendants for settling Civ. No. 03-027 without clearing plaintiff's lien. (D.I. 1 at 6-11)

On February 4, 2010, plaintiff wrote to defendants asking whether defendants intended to make any payments obligated to plaintiff under the Agreement. (Id. at ¶ 18) Defendants responded on February 16, 2010 denying any obligation under the

---

[4]United States Patent Numbers: 5,895,406; 5,938,682; 5,980,553; and 6,162,243. (D.I. 47, ex. C at § 1.5)

[5]United States Patent Numbers: 4,733,665; 4,739,762; 4,776,337; 5,102,417; 5,195,984; and 5,902,332. (D.I. 47, ex. C at § 1.5)

4

Agreement to pay plaintiff in virtue of the settlement between defendants and Cordis. (*Id.* at ¶ 19)

## III. STANDARD OF REVIEW

A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed.R.Civ.P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (*Id.* at 545) (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." (*Id.*) Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." (*Id.*)

5

## IV. DISCUSSION

### A. Legal Standard

Under Massachusetts law, contract interpretation is a question of law unless the contract is ambiguous. *Nicolaci v. Anapol*, 387 F.3d 21, 26 (1st Cir. 2004). A contract is ambiguous if "an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." (*Id.* at 27) (*quoting Lohnes v. Level 3 Comms., Inc.*, 272 F.3d 49, 53 (1st Cir. 2001)). Whether a contract term is ambiguous is a question of law for the court. (*Id.* at 27) Ambiguity is not created because parties disagree about the meaning of the contract. (*Id.*) In interpreting contract language, the contract is considered as a whole. (*Id.*) In interpreting the contract, "courts should not attempt to accomplish by judicial fiat what [a party] neglected to achieve contractually." *Federal Deposit Ins. Corp. v. Singh*, 977 F.2d 18, 23 (1st Cir. 1992). Courts are not in the position to "rewrite contracts freely entered into between sophisticated business entities." *AccuSoft Corp. v. Palo*, 237 F.3d 31, 41 (1st Cir. 2001) (*quoting Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 856 (1st Cir. 1987).

### B. Breach of Contract Claims

Plaintiff claims breach of contract in counts one and two arising from defendants' settlement of Civ. Nos. 03-027 and 08-779 with Cordis. As described above, defendants paid Cordis $1.75 billion; granted Cordis fully-paid up, retroactive, perpetual and irrevocable licenses to eleven Jang stent patents; and released all infringement claims against Cordis. (D.I. 1 at ¶ 13) Cordis granted defendants fully-paid up, retroactive,

6

perpetual and irrevocable licenses to the Gray and Palmaz patents and released defendants of any claims for infringing those patents. (*Id.* at ¶ 14) In short, the settlement involved a mutual exchange of technology and a payment of $1.75 billion from defendants to Cordis. In count one of the complaint, plaintiff alleges Cordis' infringement of the '021 patent is worth a benefit of at least $2.5 billion and that defendants are obligated to pay $50 million for recovery of damages. (*Id.* at ¶ 22) Plaintiff further contends that defendants are obligated to pay an additional $50 million from Cordis' infringing sales of the '021 patent reaching $2.5 billion. (*Id.*) In count two, plaintiff alleges that defendants are obligated to pay $50 million for consideration received in the fully-paid up, retroactive, perpetual and irrevocable licenses to eleven Jang stent patents. (*Id.* at ¶ 26) In addition, plaintiff contends that defendants are obligated to pay $50 million for the license consideration allegedly reaching $2.5 billion. (*Id.*) With respect to both counts, the question at bar is whether the Agreement unambiguously provides that plaintiff can recover damages based upon defendants' in-kind, non-monetary settlement with Cordis.[6]

Section 7.3(c) of the Agreement states:

> Any recovery of **damages** by Scimed in a suit brought pursuant to the provisions of this section 7.3 shall be applied first in satisfaction of any unreimbursed expenses and legal fees of Scimed relating to the suit or settlement thereof. The

---

[6] In plaintiff's Rule 12(c) motion, plaintiff argues breach of contract due to defendants' violation of the anti-assignment clause, § 9.4 of the Agreement. (D.I. 50 at 5) As this assertion is not in the complaint, the court will not discuss it here.

> **balance**, if any, remaining after Scimed has been compensated for expenses shall be retained by Scimed; provided that any recovery of ordinary damages based upon such infringement shall be deemed to be "Net Sales" and **upon receipt** of such recovery amount, Scimed **shall pay** Jang as additional Earn Out from such recovery amount **an amount calculated** in accordance with Section 3.1(c) to reimburse Jang for payments due in respect of lost sales of Contingent Payment Products. Any such recovery shall count towards Net Sales as of the date of the infringement for purposes of Section 3.1(d). The allocation described in this Section 7.3(c) shall not apply as to special or punitive damages.

(D.I. 47, ex. A) (emphasis added)

Plaintiff asserts in his motion that "if BSC had achieved a direct cash settlement recovery, they would clearly be subject to § 7.3(c)." (D.I. 46 at 9) "Instead, BSC opted to offset the value of that recovery against its own liability to J&J, and to recover licenses to two J&J patents." (*Id.*) According to plaintiff, defendants worked around the settlement to avoid a cash settlement recovery by acquiring and granting licenses to Cordis.

The language in § 7.3(c), such as "the balance," "upon receipt," and "Scimed shall pay as additional Earn Out from such recovery amount an amount calculated," refers to cash received or monetary profits. (D.I. 47, ex. A) Defendants did not "receive" any monetary payments. Since no money was received, there was no "balance" to be further processed according to § 7.3(c). On its face then, the Agreement does not contemplate payments to plaintiff based on the "non-monetary value" of the Jang stent patents.[7]

---

[7]Terms not used in § 7.3(c) include "benefit," "value," or "consideration received."

8

In his motion, plaintiff argues that "damages" are broadly defined under Massachusetts case law and allows for recovery from license considerations and sales profits. The cited cases, however, are distinguishable from the facts at bar. In *Wyman-Gordon Company v. Liberty Mutual Fire Insurance Company*, Civ. No. 96-2208A, 2000 WL 34024139, at *7 (Mass. Super. July 14, 2000), the court stated that the term "damages has not been read literally by Massachusetts courts." That case, however, was a class action case couched with an ERISA claim that entitled plaintiffs to recover reasonable attorney fees as damages. (*Id.* at *7) In *Hazen Paper Company v. United States Fidelity and Guaranty Company*, 555 N.E.2d 576, 583 (Mass. 1990), the court ruled "damages includes environmental clean-up costs." In that case, "damages" was used in a rational, common sense manner because the language in the policy was rendered ambiguous. (*Id.* at 583)

By contrast, the language in the Agreement is not ambiguous, as § 7.3(c) describes the apportionment of monetary "balance(s)" between parties. The court is unable to accomplish by judicial fiat what plaintiff neglected to achieve contractually. *Federal Deposit Ins. Corp.*, 977 F.2d at 23. Nor is this court in the position to "rewrite contracts freely entered into between sophisticated business entities." *AccuSoft Corp.*, 237 F.3d at 41 *(quoting Mathewson Corp. v. Allied Marine Industries, Inc.*, 827 F.2d 850, 856 (1st Cir. 1987)).

Plaintiff also claims that defendants are obligated to pay $50 million from Cordis' infringing sales after its sales amounts allegedly reached $2.5 billion. (D.I. 1 at ¶ 22) Section 3.1(d) of the Agreement reads:

9

> In addition to the contingent payment due Jang pursuant to section 3.1(c), Scimed shall pay to Jang as additional consideration for the purchase of the Assets, an additional purchase price amount equal to $50,000,000 of the aggregate Net Sales of Contingent Payment Products[8] on a worldwide basis during the period commencing on the date of the First Commercial Sale of Contingent Payment Products in the United States and ending at 11:59 PM on the fifth anniversary of the date of the First Commercial Sale of Contingent Payment Products in the United States (the Performance Period) equals or exceeds $2,500,000,000.

(D.I. 47, ex. A) If the Contingent Payment Products covered by any of the eleven Jang stent patents (including the '021 patent) equals or exceeds $2.5 billion, defendants are obligated to pay plaintiff $50 million for breach of contract. (D.I. 47, ex. A § 3.1(d)) If the Contingent Payment Products are not covered by any of the Jang stent patents, then defendants did not breach the contract and are not obligated to pay plaintiff. (Id.)

Plaintiff's complaint makes the general allegation that infringing sales by Cordis reached $2.5 billion. (D.I. 1 at ¶ 22) There is no mention of Contingent Payment Product sales by third parties in any section of the Agreement. (D.I. 33, ex. A) In his motion, plaintiff argues that "sales by an infringing third party reduce BSC's potential sales yet do not impose a separate requirement that Jang prove BSC's actual lost sales." (D.I. 50 at 14) Plaintiff does not give any specific details as to the products sold or covered by the eleven Jang stent patents, nor does he correlate any such products to

---

[8]"*Contingent Payment Products* means any stent, including any stent pre-mounted on a delivery system or any stent with coatings, coverings or other features, **manufactured by or for Scimed or any of its Affiliates** the development, manufacture, use, or sale of which is covered by one or more Valid Claims of the Patents in the jurisdiction in which such stent is manufactured or sold or which, but for the assignment made pursuant to this Agreement, would infringe one or more Valid Claims of the Patents." (D.I. 47, ex. A) (emphasis added)

any particular patent(s).[9] Still, defendants have not received any cash payments for any sales and plaintiff does not so assert in the complaint. Moreover, plaintiff has previously received $10 million from defendants for failure to commercialize Jang stent patents. (D.I. 1 at ¶ 8) For these reasons, the claims should be dismissed as unactionable on the face of the Agreement.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff claims the manner in which defendants structured the settlement with Cordis violated the covenant of good faith and fair dealing by depriving plaintiff of the benefits to which he should have been entitled under the Agreement. Under Massachusetts law, "every contract is subject to an implied covenant of good-faith and fail dealing." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 583 N.E.2d 806, 821 (Mass. 1991). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (*Id.* at 820) (quoting *Uproar Co. v. National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir. 1936)). There can be no breach of covenant of good faith and fair dealing, however, in the absence of a breach of contract. *Epstein, Becker & Green, P.C. v. Atlas Venture*, Civ. No. 02-5445, 2003 Mass. Super. LEXIS 84, at *14 (Mass. Super. Mar. 24, 2003); *Dimaio Family Pizza Luncheonette, Inc. v. Charter Oak Fire Ins.*, 349 F. Supp. 2d

---

[9]The United States District Court for the Central District of California previously ruled defendants have never sold any products covered by plaintiffs' patents. (D.I. 33, ex. 10) (Civ. No. 05-00426) On appeal, the United States Court of Appeals for the Federal Circuit ruled there was a lack of proper context for an accurate claim construction and remanded back for clarification. *Jang v. Boston Scientific Corp.*, 532 F.3d 1330 (Fed. Cir. 2008). The Federal Circuit was unclear as to the effect of claim construction on the ultimate breach of contract issue. That issue is pending in California.

128, 134 (D. Mass. 2004); See also AccuSoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir. 2001) ("The requirement of good-faith performance ultimately is circumscribed by the obligations - the contractual "fruits" - actually contained in the agreement"). As defendants did not breach the contract, they could not have violated the covenant of good faith and fair dealing.

### D. Breach of Fiduciary Duty

In count four of his complaint, plaintiff claims defendants breached their fiduciary duties in structuring the settlement with Cordis. Section 9.4, entitled "Independent Contractors," reads:

> Each party represents that it is **acting on its own behalf** as an **independent contractor** and is **not acting as an agent** for or on behalf of any third party. This Agreement and the relations hereby established by and between Jang and Scimed **do not constitute a partnership, joint-venture, franchise, agency or contract of employment.** Scimed is **not granted, and shall not exercise, the right or authority to assume or create any obligation or responsibility** on behalf of or in the name of Jang or its Affiliates.

(D.I. 47, ex. A) (emphasis added) On its face, the language in § 9.4 does not contemplate any fiduciary duties between plaintiff and defendants. Both parties have agreed to act on their own behalf and, according to Massachusetts law, "a person who contracts to perform an act for another, but who is not a fiduciary for the 'other' is an independent contractor." Bennett Importing Co. v. Continental Airlines, Civ. No. 87-2957-K, 1988 U.S. Dist. LEXIS 19410, at *11 (D. Mass. Dec. 27, 1988). In light of the fact that no fiduciary duty existed, defendants could not have breached one.

### E. Claim for Relief for Enforcement of Equitable Lien

In count five, plaintiff claims enforcement of an implied or equitable lien on all rights and considerations of defendants to recover from the '021 patent infringement action (Civ. No. 03-027), and settlement of said action. (D.I. 1 ¶ 39) Under Massachusetts law, an equitable lien is a "charge upon specific property, entitling the holder of the lien to have the property applied in equity to the payment of his debt as against all other claimants of the property." *U.S. v. Friedman*, 143 F.3d 18, 23 (1st Cir. 1998). An equitable lien may "arise out of express agreement by a debtor to pay a creditor out of a specific fund." (*Id.* at 23) It may also be "implied and declared by a court out of general considerations of right and justice." *In re Morais*, Civ. No. 09-42079, 2009 Bankr. LEXIS 3014, at *10 (Bankr. Mass. Sept. 18, 2009). The party asserting an equitable lien must establish its validity. *In re Linehan*, Civ. No. 05-22470, 341 B.R. 110, at *20 (Bankr. Mass. Apr. 28, 2006). Equitable lien is not a cause of action but, instead, constitutes substitute or compensatory relief, and nothing more. *See Dep't of the Army v. Blue Fox*, 525 U.S. 255, 263 (1999); *Check v. Kaplan*, 280 Mass. 170, 174 (Mass. 1932).

The issue at bar, therefore, is whether the parties to the Agreement expressly or impliedly created a fund. Plaintiff asserts § 7.3(c) contains language that creates a fund for damages recovered in infringement suits. (D.I. 46 at 19) The court disagrees. Recovery owed to plaintiff was to originate from any recovery of damages by defendants in an infringement suit or settlement. (*Id.*) There is no language which states the recovery was to be deposited into any "fund," "account," or "trust." (*Id.*) Section 7.3(c) is

13

not ambiguous on this matter. Moreover, as established above, defendants did not recover any monetary damages through the settlement with Cordis. Judgment shall be entered in favor of defendants as to count five.

## V. Conclusion

For the aforementioned reasons, defendants' motion for judgment on the pleadings is granted. An appropriate order shall issue.